UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

JEFFREY McCOY,
*Inmate Identification No. 36769-037*,

    Petitioner,

v.

WARDEN TIMOTHY STEWART,

    Respondent.

Civil Action No. TDC-15-2540

**MEMORANDUM OPINION**

On August 26, 2015, Petitioner Jeffrey McCoy, who is currently incarcerated at the Federal Correctional Institution in Cumberland, Maryland ("FCI Cumberland"), filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, asserting that he was unlawfully charged with refusing to provide a breathalyzer sample. Presently pending before the Court is the Motion to Dismiss or, in the Alternative, for Summary Judgment filed by Respondent Warden Timothy Stewart ("the Warden"), which was filed on November 9, 2015. The Warden asserts that McCoy was found guilty of a rule infraction for "Refusing to Provide a Urine Sample or to Take Part in any Other Drug-Abuse Testing" and that McCoy received all process that was due during his institutional proceedings regarding the rule infraction.

On December 14, 2015, McCoy filed a Declaration in which he requested discovery to oppose the Government's Motion. On June 15, 2016, the Court issued an Order denying McCoy's request and directing him to respond to the Government's Motion within 21 days. That 21-day period expired on July 6, 2016, and to date the Court has not received a response from McCoy. The Motion is therefore ready for disposition, and a hearing is unnecessary. *See* D. Md.

Local R. 105.6. For the reasons set forth below, the Government's Motion, construed as a Motion for Summary Judgment, is GRANTED.

## BACKGROUND

The following facts are presented in the light most favorable to McCoy, the nonmoving party.

On May 9, 2014, Senior Officer Specialist K. Smith prepared an Incident Report, in which he alleged that McCoy violated "Code 110" for refusing to take a breathalyzer test for alcohol use. Incident Report at 2, Mot. Dismiss or, in the Alternative, Summ. J. ("Mot.") Ex. 3, ECF No. 4-5.[1] The Bureau of Prisons has promulgated regulations that prohibit certain acts by inmates, including subsection 110, which bars "[r]efusing to provide a urine sample; refusing to breathe into a Breathalyzer; [and] refusing to take part in other drug-abuse testing." *See* 28 C.F.R. § 541.3 (2016). A violation of subsection 110 is punishable by "[f]orfeit[ing] and/or withhold[ing] earned statutory good time or non-vested good conduct time (up to 100%) and/or terminat[ing] or disallow[ing] extra good time." *Id.*

According to Officer Smith, on May 9, 2014, he was conducting routine breathalyzer tests in the middle of the compound at FCI Cumberland. To prepare to administer a breathalyzer test to McCoy, he opened a new breathalyzer tube in front of McCoy to be placed on the ALCO-Sensor 111 device into which McCoy would be required to blow. McCoy refused to blow into the device and requested that Officer Smith use a new tube. Officer Smith advised McCoy that he had just removed the wrapper from a new tube and would not unwrap another tube. McCoy then asked to speak to a lieutenant. As Officer Smith escorted McCoy to Lieutenant Deurr's

---

[1] Citations are to the page numbers in the original documents. When exhibits do not have page numbers, or contain multiple sets of page numbers, citations are to the page numbers assigned by the Court's Case Management/Electronic Case Files system ("CM/ECF").

2

office, he explained that he had opened the tube in front of McCoy and would never tell an inmate to use a tube that had already been used by an inmate. When they arrived at the lieutenant's office, McCoy continued to refuse to take the breathalyzer test.

McCoy received a copy of the Incident Report on May 9, 2014, the same day it was prepared. In response, McCoy stated, "All I did was ask the officer to change the tube. I didn't refuse to take it. I just wanted a fresh tube. The tube was already there when I got there. I didn't know where that one had been." Incident Report at 3.

On May 12, 2014, the Unit Discipline Committee ("UDC"), an group of independent prison staff that reviews incident reports once investigations are complete, *see* 28 C.F.R. § 541.7, referred the Report to a discipline hearing officer ("DHO"), an impartial decision maker who had no prior involvement in the matter, *see* 28 C.F.R. § 541.8. The UDC advised: "If guilty, UDC recommends 41 days loss of [good conduct time], 30 days loss of commissary." Incident Report at 2. The DHO held a hearing on May 28, 2014. At the hearing, McCoy was represented by T. Hart-Smith, Supervisor of Education at FCI Cumberland. During the hearing, McCoy acknowledged receiving a copy of the incident report and that he understood his rights at the hearing. McCoy testified that he was walking across the yard when he was called over for a "breath test" by Officer Smith. DHO Report at 1, Mot. Ex. 6, ECF No. 4-8. McCoy stated that the machine was in the officer's hand and he was instructed to blow. McCoy stated that he blew but did not close his lips around the tube. When Officer Smith instructed him to blow through the tube, McCoy requested that the tube be replaced. When Officer Smith would not do so, McCoy refused to use the same tube because he had not seen it placed on the machine. McCoy admitted that after being taken to Lieutenant Deurr's office, he was again instructed to blow into the existing tube but refused to do so.

3

Two other inmates testified at the hearing. Shawn Lee Simons testified that McCoy was asked to submit to a breath test and that he asked for a new tube. Simons also testified that he did not see the officer wearing gloves and did not see him put the tube onto the machine, but he acknowledged that he was not present for the entire incident. Rashard Wilson testified that he heard McCoy ask Officer Smith to change the tube. He stated that he was not paying close attention and did not know if Officer Smith was wearing gloves.

Upon reviewing the evidence, the DHO issued a written report finding McCoy guilty of the rule violation. The DHO based his ruling on Officer Smith's description of the incident in the Incident Report and McCoy's admission that he did not close his lips around the tube and blow through the breathalyzer. The DHO stated that he considered McCoy's defense that he refused the breath test because he did not see Officer Smith put a clean tube on the device. Because the testimony of other inmate witnesses "shed no light on this subject" because they observed only glimpses of the incident and were unable to give a complete account of the incident, the DHO concluded that the dispute of fact boiled down to McCoy's word against Officer Smith's. *Id.* at 3. Finding that McCoy had a greater motive to argue that the tube was not changed because of the severe consequences facing him, the DHO gave greater weight to Officer Smith's account of the incident and concluded that McCoy had violated Code 110.

Based on the DHO's finding, McCoy was sanctioned with the loss of 41 days of good conduct time. He was also sanctioned with 45 days of disciplinary segregation, to be suspended pending 180 days of clear conduct. McCoy received a copy of the DHO Report.

## DISCUSSION

**I.     Legal Standard**

The Government has submitted evidence for the Court's review. McCoy had notice that the Court might consider this evidence in ruling on the Motion and filed a Declaration seeking additional discovery on whether Officer Smith placed a new tube on the breathalyzer. As noted above, on June 15, 2016, the Court denied McCoy's request and granted him 21 days to file an opposition to the Motion. McCoy has not filed an opposition. Consequently, the Motion will be construed as a motion for summary judgment. *See* Fed. R. Civ. P. 12(d).

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). The nonmoving party has the burden to show a genuine dispute on a material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248–49.

## II. Due Process in Disciplinary Proceedings

As the Court stated in its June 15, 2016 Order, the issue before it is whether McCoy received due process during the disciplinary hearing. The Government asserts that McCoy's Petition should be dismissed because he was afforded due process at the DHO Hearing and because the DHO's findings were based on "some evidence." Mot. at 6. McCoy asserts that the DHO's findings were incorrect—that he had requested a fresh tube on the breathalyzer and that his request was unfairly rejected by Officer Smith and Lieutenant Deurr. For the reasons set forth below, there is no basis to overturn the DHO's findings because the hearing met basic due process requirements.

In prison disciplinary proceedings where an inmate faces the possible loss of diminution or good time credits, the inmate is entitled to certain due process protections, including: (1) advance written notice of the alleged violation; (2) a hearing at which the inmate is afforded the right to call witnesses and present evidence, so long as doing so is not "unduly hazardous to institutional safety or correctional goals"; (3) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (4) an impartial decision maker who has provided a written statement of the evidence relied upon and the reasons for any disciplinary action. *See Wolff v. McDonnell*, 418 U.S. 539, 564–71 (1974). There is no constitutional right to confront and cross-examine witnesses or to have retained or appointed counsel at a prison disciplinary hearing. *See Baxter v. Palmigiano*, 425 U.S. 308, 322 (1976); *Brown v. Braxton*, 373 F.3d 501, 504–05 (4th Cir. 2004). As long as the process meets these requirements and the hearing officer's decision contains a written statement of the evidence relied upon, due process is satisfied. *See Wolff*, 418 U.S. at 563.

The DHO Hearing met the due process requirements set forth in *Wolff*. First, McCoy was given written notice of the charge on May 9, 2014, the day Officer Smith prepared the Incident Report and several weeks before the May 28, 2014 DHO Hearing. Second, a hearing was held at which McCoy was informed of his right to call witnesses, and McCoy and two other inmates testified. Third, McCoy was represented by Hart-Smith, even though there is no indication that McCoy is illiterate or that the hearing involved complex issues. Fourth, the DHO provided a written statement of the evidence he relied upon and the reasons for disciplinary action, which McCoy received. Hart-Smith also stated at the conclusion of the hearing that McCoy had received a fair hearing and that appropriate sanctions were imposed.

In addition, due process requires that "some evidence supports the decision by the prison disciplinary board to revoke good time credits." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985). This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced." *Id.* (quoting *United States ex rel. Vajtauer v. Comm'r of Immigration*, 273 U.S. 103, 106 (1927)). Federal courts do not review the correctness of a disciplinary hearing officer's findings of fact. *See Kelly v. Cooper*, 502 F. Supp. 1371, 1376 (E.D. Va. 1980). For example, in *Hill*, the Supreme Court found that a prison disciplinary board met due process requirements when it revoked inmates' good time credits based on an officer's indirect observation that they had assaulted another inmate. *See Hill*, 472 U.S. at 447–48, 456–57. There, the officer heard an inmate twice say loudly, "What's going on," saw an inmate bleeding from the mouth and suffering a swollen eye, and saw the charged inmates jogging away from the scene. *Id.* at 447–48. Even though there was no direct evidence that any one of the charged inmates had committed the assault, the Court concluded that the "meager" evidence was nevertheless sufficient to meet the due process requirement. *Id.* at 457. Here, the DHO relied on direct evidence from Officer Smith that McCoy had unjustifiably refused to take the breathalyzer test, in violation of Code 110. *See* 28 C.F.R. § 541.3. The third-

7

party witness testimony was inconclusive. Because there was "some evidence" to support the DHO's decision, due process was afforded to McCoy. *See Hill*, 472 U.S. at 455–57.

## CONCLUSION

For the foregoing reasons, the Government's Motion for Summary Judgment is GRANTED. A separate Order shall issue.

Date: August 3, 2016

THEODORE D. CHUANG
United States District Judge